**UNITED STATES DISTRICT COURT FOR**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 26-cv-25064-JB**

JOSE ANGEL ZAMORA-ESCALONA,

Petitioner,

v.

CHARLES PARRA, *et al.*,

Respondents.
______________________________________/

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Jose Angel Zamora-Escalona's Verified Petition for Writ of Habeas Corpus (the "Petition"). ECF No. [1]. Respondents filed a Return Opposing Petition for Writ of Habeas Corpus ("Opposition"), ECF No. [5], and Petitioner filed a Reply ("Reply"), ECF No. [6]. Respondents also filed a Supplement, ECF No. [8], as ordered by the Court, ECF No. [7], and Petitioner filed a Reply, ECF No. [9]. Upon due consideration of the parties' submissions, the pertinent portions of the record, and the applicable law, for the reasons explained below, the Petition is **GRANTED IN PART**.

## I. BACKGROUND

Petitioner is a native and citizen of Cuba. ECF No. [5-1]. On June 13, 1980, Petitioner entered the United States, and on August 13, 1980, he was granted parole under Section 212(d)(5) of the Immigration and Nationality Act ("INA"). *Id.* On June 28, 1981, Petitioner filed an application to adjust his status to a permanent residence.

*Id.* His application was denied on June 30, 1989, because he was found to be excludable from the United States based on his guilty plea to a felony charge for possession of a controlled substance. *Id.* On April 3, 2013, DHS issued a final order of removal, ordering Petitioner removed to Cuba or any alternate country prescribed by Section 241 of the INA. ECF No. [1-5]; ECF No. [5-2] ¶ 17. On January 27, 2015, Petitioner was taken into custody by Immigration and Customs Enforcement and Removal Operations ("ICE ERO"). ECF No. [5-2] ¶ 18. Petitioner was released under an Order of Supervision ("OSUP") on April 29, 2015. ECF No. [1-6].

On January 27, 2026, Petitioner was again taken into custody by ICE ERO. ECF No. [5-2] ¶ 20. On March 23, 2026, Petitioner was served with a Notice of Revocation of Release, which stated that Petitioner's OSUP had been revoked pursuant to 8 C.F.R. § 241.13(i) because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." ECF No. [5-7]. That same day, ICE ERO conducted an informal interview of Petitioner to provide him "an opportunity to respond to the reasons for revocation of his [OSUP]." ECF No. [5-7]. Petitioner did not provide any documents or a written statement during the interview. *Id.*

On April 10, 2026, Petitioner was served with a Notice to Alien of File Custody Review, which stated, among other things, that Petitioner's custody status would be reviewed on or about April 30, 2026. ECF No. [5-8]. ICE ERO was informed on April 22, 2026, that the government of Cuba denied Petitioner's repatriation. ECF No. [5-2] ¶ 25. On April 26, 2026, Petitioner was transferred from the Florida Soft Sided

Facility South in Ochopee, Florida, to the border at ERO El Paso Camp East Montana located in El Paso, Texas. ECF No. [5-6]. Since then, Petitioner has been transferred six times to various detention facilities. *Id.* On July 27, 2026, Petitioner filed the instant Petition. ECF No. [1]. Three days later, Petitioner was served with a Notice of Removal, informing Petitioner that ICE intends to remove Petitioner to Mexico. ECF No. [5-10]. Petitioner is currently detained at Krome North Service Processing Center located in Miami, Florida. ECF No. [5-6].

As mentioned, Petitioner filed the instant Petition on July 27, 2026. ECF No. [1]. Petitioner raises two claims. *Id.* In Count I, Petitioner asserts that his continued detention is unlawful and in violation of 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), because (1) he has been detained longer than six months and (2) his removal is not reasonably foreseeable. *Id.* at 24–25. In Count II, Petitioner asserts that because his "removal is not reasonably foreseeable, his detention is arbitrary and unreasonable, and therefore in violation of the Fifth Amendment's Due Process guarantee." *Id.* at 25. Petitioner requests, among other relief, that the Court grant the Petition and require Respondents to release him. *Id.* at 26.

Respondents filed a Response to the Petition. ECF No. [5]. Respondents first argue that Petitioner's detention is lawful under 8 U.S.C. § 2241. *Id.* at 5. Second, Respondents acknowledge that Petitioner has been detained for 185 days but argue that the removal period should be tolled at 90 days because "much of [Petitioner's] detention is attributable to [his] failure to cooperate with the removal process and

thwarting all efforts to be removed from the United States." *Id.* at 6. In support of this argument, Respondents assert that Petitioner "filed a second habeas petition" and that Respondents took Petitioner to Texas and he "refused to cross into Mexico from the border." *Id.* at 10. Third, Respondents argue that Petitioner has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 9. Finally, Respondents assert that Petitioner has failed to show that his detention violates his due process rights. *Id.* at 11.

In Reply, Petitioner asserts that he carried his burden of establishing that there is no significant likelihood of removal in the reasonably foreseeable future. ECF No. [6] at 3. Next, he argues that Respondents provided no evidence of foreseeable removal. *Id.* at 4–6. He also argues that Respondent's thwarting-removal theory is also unsupported by any evidence. *Id.* at 6

On August 10, 2026, the Court ordered "Respondents … to file a Supplement … with supporting evidence, explaining the factual basis of its statements that 'Petitioner refused to cross into Mexico from the border, thus thwarting his removal from the United States' and '[o]nce the Petitioner cooperates with the Respondent, the petitioner will likely be removed from the United States.'" ECF No. [7] (quoting ECF No. [5] at 10, 12). In Response to the Court's Order, Respondents provided a Supplement, which state as follows:

> Petitioner was transported to the ERO El Paso Camp detention facility in Texas in April of 2026. ... The Petitioner acknowledged that he was in El Paso in April of 2026 and that ICE attempted to force him across the Border in Mexico. … The Petitioner further acknowledges that he like others before him, simply exercised his right to decline to be removed to Mexico (paraphrased). ... Based on the records and Petitioner's

> statement, the Petitioner was not removed from the United States because he declined and was returned to the Krome detention facility. … In 28 U.S.C. § 2241 habeas corpus proceedings, a Petitioner's admissions can be used against them under Federal Rule of Evidence 801(d)(2). Undersigned counsel reached out to Respondent to provide additional evidence to further corroborate the statements made. The Respondent provided a supplemental Declaration wherein, the Respondent confirmed that on March 23, 2026, the Petitioner's supervised released was revoked due to a significant likelihood of removal in the reasonably foreseeable future. … The Petitioner having been served with a Notice of Removal to Mexico, further establishes the Respondent's intent to remove the Petitioner from the United States.

ECF No. [8]. The deportation officer's supplemental declaration states that "ICE ERO served Petitioner with a Notice of Removal … informing Petitioner that ICE intends to remove Petitioner to Mexico," and that "Mexico routinely accepts Cuban nationals without a need for travel documents." ECF No. [8-1] ¶¶ 21, 24. The declaration also states that ICE ERO's "systems do not contain further detail regarding attempts at Petitioner's physical removal or failure by Petitioner to cooperate with physical removal attempts" beyond the statements in the Petition that "ICE attempted to force him across the border into Mexico" and "essentially asked him to depart." *Id.* ¶¶ 19–20. In Petitioner's Reply to Respondents' Supplement, he reasserts that Respondents have no evidence to support their thwarting-removal theory and argues that declaration merely offers conclusions where *Zadvydas* requires evidence. ECF No. [9].

## II. ANALYSIS

The Court has jurisdiction over a Petitioner's habeas claim that the length of his detention violates due process. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and

constitutional challenges to post-removal-period detention."). Title 8 U.S.C. § 1231(a)(1) requires the Government to effectuate an alien's removal within a ninety-day "removal period." 8 U.S.C. § 1231(a)(1). During this removal period, the Government must detain the alien. 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). The government may detain an alien beyond the ninety-day removal period only for a length of time "reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.

In *Zadvydas*, the Supreme Court considered the petitions of two resident aliens who challenged the constitutionality of their detentions pursuant to 8 U.S.C. § 1231(a)(6), which permits the Government to detain an alien subject to a final order of removal beyond the 90-day statutory removal period set forth in § 1231(a)(1). *Id.* at 682. Although no country was willing to accept either alien once they were ordered removed, the Government continued to detain them after the expiration of § 1231(a)(1)'s 90-day removal period. *Id.* at 684-86. The Supreme Court held that a detainee may file a petition for writ of habeas corpus to challenge the reasonableness of their continued detention when the Government is unable to effectuate removal within the 90-day removal period. *Id.* at 687.

The Supreme Court further held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690, 699. In so ruling, the Supreme Court explained

that it is presumptively reasonable for the Government to detain an individual for a period of six months while it effectuates that individual's removal. *Id.* at 701. That said, after this six-month period, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and grant the petition for writ of habeas corpus, "conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Id.* at 699–700.

Accordingly, to state a valid claim under *Zadvydas*, a petitioner must show (1) "post removal order detention in excess of six months," and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.* (quoting *Zadvydas*, 533 U.S. at 701 ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

Here, the first prong is met given that Petitioner has been in custody since January 27, 2026, which is more than six months from when he filed the Petition. *See* ECF No. [5-6]; *Akinwale*, 287 F.3d at 1052 ("This six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*.").

Respondents' argue that the Court should "toll[] the removal period at 90 days" due to "Petitioner's failure to cooperate with the removal process and thwarting all efforts to be removed from the United States." ECF No. [5] at 6. Specifically, Respondents argue that the time period should be tolled given that Petitioner has thwarted his removal because he "filed a second habeas petition," and that Respondents took Petitioner to Texas and he "refused to cross into Mexico from the border." *Id.* at 10.

First, the Court does not find that Petitioner's filing of a habeas petition amounts to thwarting his removal.

Second, Respondents have failed to provide evidence that Petitioner *thwarted* his removal efforts by refusing to cross the border into Mexico. As one court in this Circuit noted in a similar case:

> It is unclear whether ICE transported Petitioner to the border and essentially asked him to voluntarily depart, whether ICE had ever previously communicated with Mexico regarding Petitioner, or whether ICE even had an approved plan for removal to Mexico that Petitioner actually thwarted in some way. Further, assuming that Mexico was willing to accept Petitioner, the officer does not explain why ICE could not or did not thereafter seek travel documents for Petitioner or otherwise plan for his removal to Mexico via a different way, such as a charter flight.

*Hernandez v. Mullin et al.*, No. 3:26-CV-619-JEP-PDB, 2026 WL 2249504, at *4 (M.D. Fla. Aug. 5, 2026). Here, Cuba denied Petitioner's repatriation, and there is no evidence of previous communications with Mexico or a plan for removal to Mexico. ECF No. [8-1] ¶ 11. Respondents do not even argue that "necessary travel documents have been sought—let alone obtained—for any country." *Torres v. Warden, Fla. Soft Side S. Det. Facility*, No. 2:26-CV-1141-JES-NPM, 2026 WL 1993262, at *2 (M.D. Fla.

July 10, 2026). "An effort to compel an individual to voluntarily depart by walking across an international border to a country of which he is not a citizen is not a removal effort." *Mendoza Martinez v. Parra*, No. 26-CV-24255, 2026 WL 2318024-BB, at *6 (S.D. Fla. Aug. 11, 2026).[1]

As to the second prong, the Court has no evidence on which to find that there is a significant likelihood of removal to any country in the reasonably foreseeable future. Despite the Court specifically requesting that Respondents provide "supporting evidence [and] the factual basis of its statement[] that … '[o]nce the Petitioner cooperates with the Respondent, the petitioner will likely be removed from the United States," ECF No. [7], Respondents have provided no such evidence. While Respondents provide a declaration of a deportation officer stating that "ICE ERO served Petitioner with a Notice of Removal … informing Petitioner that ICE intends to remove Petitioner to Mexico," and that "Mexico routinely accepts Cuban nationals without a need for travel documents," ECF No. [8-1] ¶¶ 21, 24, that evidence does not provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Akinwale*, 287 F.3d at 1052; *Losada Diaz v. Parra*, No. 25-22624-CV, 2026 WL 1223375, at *4 (S.D. Fla. Jan. 25, 2026) (determining that the respondents failed to provide evidence rebutting Petitioner's

[1] In addition, Respondents fail to provide evidence to support their contention that Petitioner refused to cross the border into Mexico. Respondents provided a declaration of a deportation officer, which states that ICE ERO's "systems do not contain further detail regarding attempts at Petitioner's physical removal or failure by Petitioner to cooperate with physical removal attempts" beyond the statements in the Petition that "ICE attempted to force him across the border into Mexico" and "essentially asked him to depart." *Id.* ¶¶ 19–20.

showing that his removal is not imminent" where the respondents merely cited "the declaration of a deportation officer, who describes how the 'Government of Mexico has agreed to accept the repatriation of Cuban citizens with final orders of removal from the United States'" but "set forth no specific plan for Petitioner's proposed repatriation, nor … state[d] that Mexico has actually agreed to accept Petitioner"); *Fuentes v. Ripa*, No. 26-CV-134-MMH-PDB, 2026 WL 717982, at *3, n.7 (M.D. Fla. Mar. 16, 2026) ("Simply providing [Petitioner] with a notice of removal to a third country does not show a 'significant likelihood' that he will be removed to that country in the reasonably foreseeable future."); *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518 (W.D. Wash. Dec. 19, 2025) ("[S]tanding alone, the fact that removals to a particular country are in fact occurring, says nothing about whether Mexico will accept [Petitioner] any time soon.").

Given that Petitioner has been detained in excess of six months and the Court has no evidence on which to find that there is a significant likelihood of removal to any country in the reasonably foreseeable future, the Court finds that Petitioner has stated a claim under *Zadvydas* and Respondents must afford him an individualized bond hearing. *See Benitez v. Wallis,* 402 F.3d 1133, 1135 (11th Cir. 2005) (holding that an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future); *Martinez-Marino* v. *Sheriff of Baker's County Sheriff's Office*, No. 3:25-CV-854-JEP-MCR, 2026 WL 681812 (M.D. Fla. Mar. 11, 2026) (granting petition under *Zadvydas* for failure to show reasonable likelihood of

removal where petitioner, who had been detained "more than eight months beyond the six-month period," asserted that "ICE has not identified any agreement with a third country to accept him, requested travel documents, or provided a timeline for potential third-country removal" and "Respondents have not provided any evidence to suggest that ICE has actually communicated with Mexico or any other third country regarding Petitioner."); *Hernandez v. ICE*, No. 3:26-CV-8-MMH-MCR, 2026 WL 776166 (M.D. Fla. Mar. 19, 2026) (granting petition under *Zadvydas* for failure to show reasonable likelihood of removal); *see also Rivero-Cuervo v. Bondi,* No. 3:26-CV-78-JEP-LLL, 2026 WL 741648 (M.D. Fla. Mar. 17, 2026) (granting habeas petition pursuant to *Zadvydas* where counsel for respondents concede that he "has no information to indicate that there is any significant likelihood of removal in the reasonably foreseeable future in this case."); *Haghnejad v. Rhoden*, No. 3:26-CV-1-MMH-PDB, 2026 WL 496774 (M.D. Fla. Feb. 23, 2026) (granting Iranian petitioner's habeas petition after "Respondents have failed to show a significant likelihood that [Petitioner] will be removed in the reasonably foreseeable future."); *Joseph v. Rhoden*, No. 3:25-CV-1579-MMH-PDB, 2026 WL 262589 (M.D. Fla. Feb. 2, 2026); *Ferrer v. Barr*, No. 19-25265-CIV, 2020 WL 13548087 (S.D. Fla. Apr. 14, 2020) (granting petition where respondents failed to rebut petitioner's showing that removal was unlikely in the foreseeable future); *Mitchell v. Gonzales*, No. 4:06CV333-WS, 2007 WL 121348 (N.D. Fla. Jan. 12, 2007) (granting petition where respondents did not present evidence showing a significant likelihood of removal in the reasonably foreseeable future).

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition, ECF No. [1], is **GRANTED IN PART**. Accordingly, Respondents shall promptly afford Petitioner an individualized bond hearing within seven days of this Order or otherwise release Petitioner.

2. Respondents shall, within 24 hours of the bond hearing, file a Status Report indicating the outcome of the bond hearing and, if release on bond is denied, the reason(s) for the denial.

3. Any remaining claims in the Petition are **DISMISSED WITHOUT PREJUDICE**.

4. Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 25th day of August, 2026.

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**